(No. 35479.—

CHICAGO TITLE & TRUST COMPANY, Trustee, *et al.,* Appellees, *vs.* THE VILLAGE OF LOMBARD, Appellant.

*Opinion filed March 31, 1960.*

ANCEL, SIEGEL & STONESIFER, of Chicago, (LOUIS ANCEL and JACK M. SIEGEL, of counsel,) for appellant.

LYLE H. ROSSITER, and KIRKLAND, ELLIS, HODSON, CHAFFETZ & MASTERS, both of Chicago, (HOWARD ELLIS and DAVID PARSON, of counsel,) for appellees.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

The village of Lombard appeals directly to this court from a declaratory judgment of the circuit court of Du Page County holding unconstitutional and void a village ordinance concerning the location of gasoline stations.

The ordinance in question was passed on June 22, 1957, as an amendment to a comprehensive ordinance regulating gasoline stations. It appears as section 25A of ordinance No. 728 and provides that after its effective date "no filling station may be erected on a lot within 650 feet of any lot upon which a filling station, licensed under the provisions of this ordinance, is in operation. The distance between any two lots affected by the terms of this section shall be measured between the points of the lot lines in closest proximity to each other." The action was brought by Chicago Title & Trust Company, as trustee, and Jerry F. Jana, as

contract purchaser, of a certain vacant parcel of ground located at the northeast corner of Division Street and Westmore Avenue in the village of Lombard. The property is situated in a "D" zone under the village zoning ordinance, wherein filling stations are permitted uses.

In their complaint as amended the plaintiffs allege that they desire to erect a Standard Oil gasoline service station thereon; that the village refused a permit on the ground that the proposed station would be in violation of the ordinance; that there is in existence one filling station within the prohibited distance of the subject property; and that the ordinance is arbitrary, unreasonable, confiscatory and void. It was further alleged, with respect to unreasonableness of the ordinance, that there are no fumes or odors from service stations which adversely affect public health, welfare or safety; that the handling of gasoline and petroleum products at service stations is not dangerous to public health, safety and welfare; that the history and record of service stations is that safety and fire hazard prevention is better than that of public buildings other than churches; that there is no relation between fires at service stations and the proximity of one service station to another; that dispensing of gasoline does not adversely affect public health; and that there has never been a fire or explosion in an underground gasoline storage tank in a service station in active operation.

Defendant moved to strike the amended complaint on the ground that it failed to allege facts sufficient to rebut the presumption of validity. The motion was denied, and an answer was filed denying the material allegations of the complaint as amended.

The village of Lombard has a population of approximately 21,462. Fourteen licensed filling stations operate within the corporate limits. The subject property, measuring 88 feet by 137 feet in size, is located in an area within which a filling station is a permitted use under the village's

zoning ordinance, but is within 650 feet of an existing filling station. To prove the ordinance is arbitrary and unreasonable plaintiffs introduced the testimony of three witnesses and also called a member of the village board as an adverse witness under section 60 of the Civil Practice Act. The first witness was John Ainlay, the executive secretary of the Central Region Committee on Public Affairs of the American Petroleum Institute, who qualified as an expert in the chemistry of petroleum products. He testified to the safety of gasoline storage facilities at filling stations and the low incidence of fires at gasoline stations. He stated that there had never been an explosion in an underground tank in use at a service station; that he knew of no fire which had ever spread from one station to another, and that in his opinion the proximity of one gasoline station to another has nothing to do with fire safety factors. Over objections by the village, printed material published by the American Petroleum Institute was introduced in evidence dealing with the infrequency of fire losses and traffic hazards connected with filling stations. Also over objections by defendant, the witness performed a series of demonstrations in the courtroom to show the basis of his opinions concerning the inflammability of gasoline vapors under varying conditions.

The next witness for the plaintiffs was William O. Wilson, manager of the safety department of Standard Oil Company. He testified to having supervised the preparation of plaintiffs' exhibit No. 6, a compilation of statistics on fire loss and frequency at Standord Oil Company stations and other properties. The exhibit indicates that in 1957, in over 11,000 service stations, there were 28 fires. Of these only two spread to other properties which, according to the witness, could include objects such as light poles only slightly damaged. He indicated the report was typical of such statistics since 1944. Plaintiffs' third witness was Paul D. Halley, industrial hygienist in the medical department

of Standard Oil Company, who testified as to permissible limits of exposure to hydrocarbon vapors such as those found in gasoline vapors. He stated that in his opinion there was no injury to health resulting from the odor of fumes emitted from loading automobile tanks at gasoline service stations. Wayne Weghorn, a member of the village board of trustees, was called as an adverse witness and testified, over objection by counsel for defendant, that no particular facts pertaining to fire hazards in service stations were assembled when the ordinance was being considered by the board.

Defendant called as its witness the village manager, who testified that there were three or four existing locations where stations are within 650 feet of each other, and that in the areas where filling stations are concentrated there has been an inducement to burglary, traffic hazards, problems of snow removal, and an increased flow of water through sewer facilities, contributing to the drainage problem. He stated that in his opinion, based upon such reasons, the concentration of gasoline stations within 650 feet of one another did have an effect on public health and safety.

To reverse the judgment defendant argues that the ordinance is based upon statutory authority to locate and regulate filling stations and that plaintiffs have failed to overcome the presumption of its validity. Sections 23—75 and 23—87 of the Revised Cities and Villages Act delegate powers, respectively, to regulate the storage of petroleum products, and to locate and regulate the use and construction of garages. (Ill. Rev. Stat. 1957, chap. 24, pars. 23—75 and 23—87.) The authority thus conferred embraces the regulation of gasoline filling stations. (*Bulk Petroleum Corporation* v. *City of Chicago,* 18 Ill.2d. 383; *Gore* v. *City of Carlinville,* 9 Ill.2d 296; *Fligelman* v. *City of Chicago,* 348 Ill. 294.) Such power, however, is conferred in general terms, the legislature not having prescribed the details of its exercise, and an ordinance passed in pursuance of it

must be a reasonable exercise thereof or it will be pronounced invalid. *Troy* v. *Village of Forest Park,* 318 Ill. 340.

This court has recognized that the business of storing and handling gasoline at filling stations, within a municipality is attended with a degree of danger to life and property, and it has been held accordingly that a city may prohibit the construction or enlargement of filling stations in residential districts. (*Gore* v. *City of Carlinville,* 9 Ill.2d 296.) Since the purpose and effect of such laws are to protect surrounding residents and residence properties from noxious odors and inflammable vapors, they bear a sufficient relationship to the promotion of public health and safety. Ordinances are likewise valid which require filling stations and other installations for storing and handling inflammable liquids to be located at designated distances from any dwelling, school, hospital, church, theater and the like. (*Pierce Oil Corp.* v. *City of Hope,* 248 U.S. 498, 63 L. ed. 381; *Bulk Petroleum Corp.* v. *City of Chicago,* 18 Ill.2d 383.) In the *Bulk Petroleum case* we pointed out that "Such ordinances are designed to guard against loss of life from fires that result from the storage and handling of highly inflammable substances. To that end the ordinances here involved require special protection for places where people are apt to be congregated under circumstances that might be thought likely to impair their chances of escape from a flash fire."

In the case at bar, however, it is evident that such considerations do not exist, and that the actual purpose served by the restriction has little to do with public health or safety. Under section 17 of the Lombard filling station ordinance, filling stations are prohibited within 150 feet of any hospital, church or school; and it can hardly be supposed that proximity to such places, where numbers of people are accustomed to assemble, involves less danger than proximity to another filling station. To require filling

stations to be separated by at least 650 feet, while requiring an intervening distance of only 150 feet between a filling station and a hospital, church or school, is clearly unreasonable if the test is danger to the public. Expert testimony on plaintiffs' behalf indicates that the proximity of one service station to another does not enhance any danger from fire; and the site of the proposed station is within an area zoned for and devoted to business purposes, which include the operation of a gasoline service station. The inducements to burglary, and the problems of traffic, snow removal and drainage, to which reference was made by defendant's witness, were not shown to be any different with respect to filling stations than with respect to other businesses. In holding arbitrary and unreasonable an ordinance requiring frontage consents for the use of property as a gasoline service station, this court recently observed that automobile parking lots, cleaning plants, paint stores, restaurants and other establishments in a business district present, in varying degrees, traffic and safety hazards comparable to those attending the operation of a gasoline station. *Wolford* v. *City of Chicago,* 9 Ill.2d 613.

Under the police power of the State new burdens may be imposed upon property and new restrictions placed upon its use when the public welfare demands it. The police power is, however, limited to enactments having reference to the public health, safety, comfort and welfare. An act which deprives a citizen of his liberty or property rights cannot be sustained under the police power unless a due regard for the public health, safety, comfort or welfare requires it. (*State Bank and Trust Co.* v. *Village of Wilmette,* 358 Ill. 311.) An ordinance, to be valid, must be reasonable. In determining the question of reasonableness the court may take into consideration the object to be accomplished by the ordinance and the means provided for its accomplishment. If the ordinance is not general in character, or if it does not operate equally upon all persons of

the same class within the municipality, it cannot be sustained. *People ex rel. Russell* v. *Andrews,* 339 Ill. 157.

In *People ex rel. Deitenbeck* v. *Village of Oak Park,* 331 Ill. 406, an ordinance defined as a residential district an area measuring 400 feet from the outer walls of a proposed building in every direction, within which area more than one half of the buildings are used for residential purposes. The provision was held to be arbitrary and oppressive where it operated to prevent the erection of a gasoline filling station in a section of the city devoted chiefly to commercial pursuits and where the area included another filling station as well as garages. In *Tugman* v. *City of Chicago,* 78 Ill. 405, an ordinance provided that after a designated date no distillery, slaughter house, rendering establishment or soap factory shall be erected or put into operation in any building not then used for such purpose, within certain described territory in the city of Chicago. In holding the ordinance unconstitutional, this court said the fact that certain persons were already engaged in the business within the designated area provided no justification for depriving others of an opportunity to do so at a later period. It was pointed out that "If one of the citizens of Chicago is permitted to engage in the business of slaughtering animals in a certain locality, an ordinance which would prevent, under a penalty, another from engaging in the same business, would not only be unreasonable, and, for that reason, void, but its direct tendency would be to create a monopoly, which the law will not tolerate."

We think the ordinance in the case at bar is subject to similar objections. It allows the owner of property 650 feet away from an existing station to use it as a filling station but denies such a right to the owner of neighboring property within the 650-foot limit. It permits existing instances of service stations situated within 650 feet of each other to continue, but denies to plaintiffs the right to

use their property in the same way. It exempts from its requirements businesses already established, and, in operation and effect, tends to promote monopoly. The proposed service station is no different from those already in operation, and under the village zoning ordinance it is recognized that such use is an appropriate one in a business district. We cannot find on this record a rational basis for the restriction, and we agree with the court below that it is arbitrary and unreasonable.

It is not disputed that the village may impose requirements on filling stations in addition to zoning restrictions. It has power to regulate the manner in which a permitted use is carried on, the way in which buildings are erected or maintained, and the like. But any such ordinance must be reasonably designed to maintain standards of health and safety. (*Drovers Trust & Savings Bank* v. *City of Chicago,* 18 Ill.2d 476.) The requirement here that no further filling stations may be built within 650 feet of any other station has no rational connection with the objects of governmental police power.

It is urged by defendant that the allegations of the complaint were inadequate because they failed to state facts to overcome the presumption of validity. We find no merit in the contention. The allegations are adequate to inform defendant of the claim being made and the factual basis therefor.

It is also asserted that error was committed in permitting experiments concerning the chemical attributes of petroleum fires and the operation of a vapor detecting device, in admitting published material concerning fire losses at gasoline filling stations, in allowing plaintiffs' witnesses to express conclusions as to the safety from health and fire hazards at filling stations, and in permitting plaintiffs' attorney to question the village trustee, Weghorn, in reference to whether any factual information was available when the ordinance was adopted. We have exam-

ined each of the defendant's objections and conclude that while error may have been committed in some instances, it was not of such prejudicial character that a different result would have followed had the evidence been excluded. In reviewing judgments of a trial court the object is not to determine whether the record is free from error but to ascertain whether a just conclusion has been reached in a trial at which no error occurred which might be prejudicial. In this case the hearing was before the court without a jury, and it will not be presumed that the court was influenced in its decision by incompetent evidence. *Tews* v. *Woolhiser*, 352 Ill. 212.

We find no reversible error in this record, and the judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*