Bı-Lo Stations, Inc., Plaintiff-Appellant, *v.* The Village of Alsip *et al.*, Defendants-Appellees.

(No. 58636;

First District (2nd Division)—September 3, 1974.

Nat M. Kahn and Paul L. Smith, Jr., both of Chicago, for appellant.

Ancel, Glink, Diamond & Murphy, P. C., of Chicago (Louis Ancel and Barry S. Shanoff, of counsel), for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Bi-Lo Stations, Inc. (hereinafter plaintiff), brought an action against the Village of Alsip, a municipal corporation, its mayor, and the members of its board of trustees (hereinafter the defendants below will be referred to collectively as the Village), seeking an injunction and a judgment declaring a certain Village ordinance unconstitutional; a section of the ordinance in question provided that all gasoline service stations within the Village, including plaintiff's, were permitted to be in operation only between the hours of 6 A.M. and midnight of each day. After having heard evidence without a jury, the trial court entered a decree declaring

the said ordinance constitutional and valid and dismissing the plaintiff's petition for a declaratory judgment and injunction. This appeal followed.

The single issue on appeal, as we see it, is whether the ordinance in question is a constitutional regulation of the operation of plaintiff's business, reasonably related to the public safety, health, or welfare.

The record presented here reflects the following transpiration of events. On February 8, 1971, the mayor and the board of trustees of the Village passed Ordinance No. 536, an ordinance amendatory to Ordinance No. 267. Ordinance No. 536, which included a section entitled "Automobile Service Stations," provided in part:

> "*Hours of Operation:* A service station shall be permitted to be in operation only between the hours of 6:00 A.M. and Midnight of each day."

Subsequently, plaintiff brought suit against the Village, seeking declaratory relief and an injunction against the enforcement of the ordinance. On March 29, 1971, a temporary injunction against the ordinance's enforcement, in its closing hour requirements, was entered. However, after a hearing before Judge Francis Delaney on August 18, 1972, an order was entered dismissing plaintiff's petition and dissolving the injunction.

On August 21, 1972, plaintiff filed another petition for declaratory relief and injunction, and, after a denial of the Village's motion to dismiss on the grounds that the matter was res judicata [1] owing to the decree entered by Judge Delaney, the case was set for hearing before Judge Nathan Cohen on October 12, 1972. The evidence adduced at the hearing may be summarized as follows. At the time of the hearing, the Village, a suburban community south of Chicago, had approximately 40 business establishments, 10 or 12 of which were gasoline service stations, including plaintiffs' located on South Cicero Avenue in the Village, which had been in operation for about 4 years. On August 26, 1972, after the dissolution of the temporary injunction restraining the enforcement of the Village's closing-hour ordinance, an attendant at plaintiff's station was arrested by the Village police sometime after midnight on that date, the police charging that the station was closed down. Prior to that date, the station had operated on a 24-hour-a-day basis.

As part of its case, plaintiff called several Village officials as adverse

---

[1] Plaintiff argues before this court that the order of Judge Delaney dismissing plaintiff's prior suit was tantamount to an order of non-suit, which did not bar the subsequent suit against the Village. While plaintiff raises this issue in its initial brief on appeal, the Village nowhere in its brief addresses itself to the issue. Therefore, we adhere to the principle stated in Supreme Court Rules 341(e)(7) and 341(f) (Ill. Rev. Stat. 1971, ch. 110A, pars. 341(e)(7) and 341(f), to the effect that points not argued in the Village's brief are waived. In the oral argument before this court, the Village acknowledged it was not urging this point.

witnesses pursuant to section 60 of the Civil Practice Act[2]; they included the mayor, two members of the board of trustees, the chief of police, and the Village attorney.[3] A fair summary of their testimony is that service stations in the Village which remained open all night had become the target of serious crimes against persons and property, particularly during the hours between midnight and 6 A.M. Local citizens, as well as spokesmen for the police department, had expressed concern to Village officials. The situation had become a recurring topic of discussion at the Village's board meetings. The Village officials refrained from an immediate legislative response, but the situation worsened; the crimes at the stations included numerous thefts, armed robberies, and one homicide, the latter that of a young man who worked as an attendant at plaintiff's service station. It is clear from a review of the testimony of the various Village officials that the ordinance in question was passed with a view toward halting the serious crimes affecting Village service stations which remained open between midnight and 6 A.M.

On October 13, 1972, the court below decreed that Ordinance No. 267, as amended by Ordinance No. 536, was constitutional and valid and entered judgment in favor of the Village.

On appeal, plaintiff contends variously: (1) that the ordinance is discriminatory and invalid in that it deals only with service stations and ignores all other retail establishments in the Village[4]; (2) that the ordinance is void in that a municipality is without authority under its police power to regulate arbitrarily and unreasonably the hours of private business conducted in a proper manner without potential detrimental elements; and (3) that the incidence of crimes committed at the service stations between midnight and 6 A.M. was due not to any actions of station employees but to inadequate police protection in the Village.

## I.

■■ Among the several powers delegated to municipalities under Illinois' Cities and Villages Act are these: "The corporate authorities of each

---

[2] Ill. Rev. Stat. 1971, ch. 110, par. 60.

[3] Plaintiff was not bound to vouch for the veracity of the testimony of the adverse witnesses and they could have introduced any competent evidence in direct contradiction. However, plaintiff was bound by testimony of any adverse witness which stood uncontradicted and unrebutted. See *Chance v. Kinsella* (1923), 310 Ill. 515, 142 N.E. 194; *In re Estate of Donovan* (1951), 409 Ill. 195, 98 N.E.2d 757; *Kapraun v. Kapraun* (1957), 12 Ill.2d 348, 355, 146 N.E.2d 7.

[4] The record indicates that the closing hours of the Village liquor stores and taverns were regulated by municipal ordinance, though not by the ordinance in question here.

municipality may regulate and prevent the storage of \* \* \* petroleum, or any of [its] products, \* \* \*." (Ill. Rev. Stat. 1971, ch. 24, par. 11—8—4); and "The corporate authorities of each municipality may locate and regulate the use and construction of \* \* \* garages, \* \* \*." (Ill. Rev. Stat. 1971, ch. 24, par. 11—42—8.) It has been held that the authority thus conferred embraces the regulation of gasoline stations, or, as they are often known, service stations (*Chicago Title & Trust Co. v. Village of Lombard* (1960), 19 Ill.2d 98, 103, 166 N.E.2d 41; *Fligelman v. City of Chicago* (1932), 348 Ill. 294, 304, 180 N.E. 797; and *Gore v. City of Carlinville* (1956), 9 Ill.2d 296, 298-299, 137 N.E.2d 368). We find, therefore, that the Village in the matter at hand was possessed of the authority to regulate the use of plaintiff's service station.

While it is settled that the operation of service stations may be regulated by municipalities, the regulation must be "reasonably related to the public safety, health or welfare or to the prevention of public nuisances." (7 McQuillin, Municipal Corporations § 24.345 (3d ed. 1968).) This principle is reiterated in the 2nd Edition of American Jurisprudence:

> "Regulations by municipalities of the hours during which specified businesses may be conducted have been declared reasonable and constitutional where there is a patent relationship between the regulations and the protection of the public health, safety, morals, or general welfare, such as where the business is of such a character that the public health or morals are likely to be endangered if it is carried on during the late hours of the night." 56 Am. Jur. 2d *Municipal Corporations* § 474 (1971).

■■ It is also a well-founded rule that legislatures are "[n]ecessarily vested with broad discretion to determine not only what the public interest and welfare require, but what measures are necessary to secure such interests." *Tometz v. Board of Education* (1968), 39 Ill.2d 593, 600 237 N.E.2d 498.

This state's supreme court dealt with a set of circumstances similar to those presented here in *Gibbons v. City of Chicago* (1966), 34 Ill.2d 102, 214 N.E.2d 740, *cert. denied* (1966), 385 U.S. 829. In *Gibbons*, an action was brought to enjoin the enforcement of an ordinance relating to self-service, coin-operated laundries. The ordinance under scrutiny in *Gibbons* provided in part that no laundries of the type covered by the legislation could be operated between the hours of 11:30 P.M. and 6:30 A.M. The court upheld the constitutionality of the compulsory closing requirement, citing the authority delegated to municipalities by the state statutes (Ill. Rev. Stat. 1965, ch. 24, par. 11—42—8), which allowed for the regulation of the use and construction of laundries. In *Gibbons*, as

here, it was contended that the closing requirement bore no reasonable relation to the public health, safety, and welfare, and, thus, was unconstitutional. The court found to the contrary, and stated at pages 108-109 of its opinion:

"We need not determine whether the matters thus far discussed, which relate to considerations of public health and the risks of fire and personal injuries, would be sufficient, standing alone, to justify the requirement that an attendant be present when the establishment is open at night. For we are of the opinion that when they are considered in conjunction with considerations related to the deterrence of crime and criminal activity, both the requirement of an attendant and the compulsory closing provision of the ordinance are clearly justified.

Several representatives of the Chicago Police Department expressed the opinion, based upon their experience, training, background and knowledge, that the presence of an attendant between the hours of 6 P.M. and 11:30 P.M. would have a deterrent effect on crimes related to self-service, coin-operated laundries. Reports compiled by the Chicago Police Department show that the peak period of reported crime for this type of laundry increases sharply about 5 P.M., reaches a peak sometime after midnight, and decreases sharply after 4:30 A.M. This period correlates with that during which the presence of an attendant and compulsory closing are required under the ordinance. There was testimony of numerous incidents of crime of varying degrees of seriousness in connection with these laundries. Police officers testified that any warm, well-lighted place would contribute to certain types of crime, but that open, unattended laundries are almost unique in their attractiveness. It was the opinion of the police officers who testified that the incidence of larcenies of coins from the machines would decrease significantly as a result of the attendant and closing requirements."

■■ We are satisfied, *upon this record*, that the compulsory closing provisions of Ordinance No. 267, as amended by Ordinance No. 536, are neither arbitrary nor unreasonable, and that the regulation is a constitutional one, reasonably related to the public health, safety, and welfare of the Village. We hold, therefore, that the court below committed no error in entering judgment in favor of the Village.

In so holding, we are not unaware of the numerous cases cited by plaintiff from this and other jurisdictions which were meant to support its position; we find those cases to be inapposite. Each of those cases is factually distinguishable from the matter at hand, principally in that

the records presented therein were virtually barren of any circumstances which would have justified the municipal regulation.

Plaintiff, in its briefs before this court and upon oral argument, places particularly heavy reliance upon *Fasino v. Mayor* (1973), 22 N.J. Super. 304, 300 A.2d 195, an action which challenged the validity of a general closing ordinance, wherein it was held that the ordinance requiring the closing of all businesses for off-premises consumption of food and beverage from 11 P.M. to 6:30 A.M. was not a constitutional exercise of police power. We have reviewed *Fasino* carefully and find that it, too, is distinguishable from the case at bar. *Fasino* involved the question of the constitutionality of a general closing ordinance; here, that precise question is nowhere presented. Moreover, it is apparent from the *Fasino* decision that the court was not presented with a record such as that presented here, one which displays a patent relation between the closing ordinance of the Village and the deterrence of criminal activity. As a matter of fact, the *Fasino* court, in its analysis of various cases across the States which have upheld the validity of closing hours for certain types of businesses, points to *Gibbons v. City of Chicago, supra,* the case upon which we principally rely, as reflecting circumstances wherein a closing-hour ordinance was constitutionally justifiable.

Plaintiff acknowledges that ordinances prescribing reasonable closing hours are valid as a proper exercise of police power for taverns, liquor stores, pawn shops, pool rooms, second hand stores, junk dealers *and the like* "because of the potential detrimental factors that are inherent in the very nature of the conduct of these activities." Thus admitting the authority, under the proper exercise of the police power, to prescribe reasonable closing hours, the plaintiff says the qualifying conditions are absent here. Having stated that the record here established a valid basis for the exercise of the police power, and there being nothing in the record to establish that the closing hours are arbitrary or unreasonable, we find no reason, under these circumstances, why the automobile service station cannot be similarly treated as the other businesses cited by the plaintiff.

It is clear from the record before us that the closing provisions of the Village's ordinance were wholly justified as they patently related to the deterrence of crime and criminal activity in the Village.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

HAYES, P. J., and STAMOS, J., concur.