# Illinois Official Reports

## Supreme Court

---

*LMP Services, Inc. v. City of Chicago*, 2019 IL 123123

---

| | |
|---|---|
| Caption in Supreme Court: | LMP SERVICES, INC., *et al.*, Appellants, v. THE CITY OF CHICAGO, Appellee. |
| Docket No. | 123123 |
| Filed | May 23, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Anna H. Demacopolous, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James W. Joseph, of Eimer Stahl LLP, of Chicago, and Robert P. Frommer, Erica J. Smith, and Robert W. Gall, of Institute for Justice, of Arlington, Virginia, for appellant.<br><br>Edward N. Siskel, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Suzanne M. Loose, Assistant Corporation Counsel, of counsel), for appellee.<br><br>Matthew A. Clemente, of Sidley Austin LLP, of Chicago, for *amici curiae* Illinois Food Truck Owners Association *et al.*<br><br>Timothy R. Snowball, of Pacific Legal Foundation, of Sacramento, California, *amicus curiae*. |

Jeffrey M. Schwab and James J. McQuaid, of Liberty Justice Center, of Chicago, for *amici curiae* Illinois Policy Institute *et al.*

Mariana Karampelas, of MK Law, LLC, and Daniel E. Massoglia, both of Chicago, and Mahesha P. Subbaraman (*pro hac vice*), of Subbaraman PLLC, of Minneapolis, Minnesota, for *amicus curiae* Restore the Fourth, Inc.

Gretchen Harris Sperry and Robert T. Shannon, of Hinshaw & Culbertson LLP, of Chicago, for *amicus curiae* Illinois Restaurant Association.

Justices          JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas, Kilbride, Garman, Theis, and Neville concurred in the judgment and opinion.

## OPINION

¶ 1      Plaintiff, LMP Services, Inc. (LMP), filed a complaint against the City of Chicago (City)[1] alleging that sections 7-38-115(f) and 7-38-115(*l*) of the Municipal Code of Chicago (Code) (Chicago Municipal Code § 7-39-115(f), (*l*) (amended July 25, 2012)) are constitutionally invalid. Section 7-38-115(f) prohibits food trucks from parking within 200 feet of the entrance of a ground-floor restaurant (200-foot rule), and section 7-38-115(*l*) requires food truck owners to permanently install on their vehicles a global positioning system (GPS) device that transmits location information to a GPS service (GPS requirement).

¶ 2      The circuit court of Cook County granted the City's motion for summary judgment, upholding the constitutional validity of the two provisions. The appellate court affirmed that ruling. 2017 IL App (1st) 163390. We granted LMP's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2017). For the reasons that follow, we affirm the judgment of the appellate court.

¶ 3                          BACKGROUND

¶ 4      In July 2012, the Chicago City Council passed Ordinance 2012-4489. Chi. City Clerk J. Proc. 31326 (July 25, 2012), https://chicityclerk.s3.amazonaws.com/s3fs-public/document_uploads/journals-proceedings/2012/072512.pdf [https://perma.cc/CHN8-KNZU].

---

[1]Greg Burke and Kristin Casper, the owners of the food truck "Schnitzel King," originally filed suit against the City along with LMP, which is owned by Laura Pekarik and operates "Cupcakes for Courage" food trucks. The Schnitzel King food truck went out of business in 2014. Burke and Casper were then voluntarily dismissed from the case.

The ordinance amended some provisions and added others to chapters 4-8 and 7-38 of the Code regarding the regulation of mobile food vehicles (food trucks) within the City. The ordinance kept in place section 7-38-115(f), a proximity restriction known as "the 200-foot rule" that had been in effect since September 1991. This provision states that "[n]o operator of a mobile food vehicle shall park or stand such vehicle within 200 feet of any principal customer entrance to a restaurant which is located on the street level." Chicago Municipal Code § 7-38-115(f) (amended July 25, 2012). The provision also defines "restaurant" as "any public place at a fixed location kept, used, maintained, advertised and held out to the public as a place where food and drink is prepared and served for the public for consumption on or off the premises pursuant to the required licenses." *Id.* The restriction applies regardless of whether the food truck is parked on private or public property.

¶ 5    Although Ordinance 2012-4489 did not amend section 7-38-115(f) itself, the ordinance added or amended other provisions of the Code that affect section 7-38-115(f). For example, Ordinance 2012-4489 amended section 7-38-128(d) to increase the minimum fine for any violation of section 7-38-115 to $1000, quadrupling the previous minimum fine amount. See *id.* § 7-38-128(d) ("Any person who violates sections 7-38-115 and 7-38-117 of this chapter shall be fined not less than $1,000.00 and not more than $2,000.00 for each offense. Each day that the violation occurs shall be considered a separate and distinct offense.").

¶ 6    The ordinance also added section 7-38-117 to the Code. This new provision established a "mobile food vehicle stands program" whereby the City reserved a number of designated areas on the public way where a certain number of food trucks are permitted to operate without being subject to the 200-foot rule. *Id.* § 7-38-117(c).

¶ 7    Another new provision that was added to the Code by the ordinance is section 7-38-115(*l*). This provision established a "GPS requirement" that compels food truck owners to install on their food trucks a permanent GPS device "which sends real-time data to any service that has a publicly-accessible application programming interface (API)." *Id.* § 7-38-115(*l*).

¶ 8    Soon after the passage of Ordinance 2012-4489, a complaint was filed against the City by LMP, a corporation owned by Laura Pekarik, who began operating the food truck "Cupcakes for Courage" throughout the Chicagoland area in 2011. In the complaint, LMP alleged that sections 7-38-115(f) and 7-38-115(*l*) of the Code are constitutionally invalid. Specifically, LMP alleged the 200-foot rule contained in subsection (f) violates the equal protection and due process clauses in article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) because it is protectionist and unreasonably favors brick-and-mortar restaurants over food trucks. LMP further alleged that the GPS requirement in subsection (*l*) is unconstitutional because it constitutes a continuous, unreasonable, warrantless search of food trucks in violation of article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, § 6).

¶ 9    The circuit court dismissed LMP's equal protection claim but allowed the remainder of the claims to go forward. Following discovery, both parties moved for summary judgment, and the circuit court granted the City's motion. The circuit court held that plaintiff's substantive due process challenge to the 200-foot rule failed because the rule satisfies the rational basis test. The court concluded that the 200-foot rule balances the needs of both restaurants and food trucks and serves to protect a legitimate City interest in reducing pedestrian traffic. Therefore, the court held that the 200-foot rule does not violate due process and is constitutionally valid.

¶ 10 The circuit court also upheld the constitutionality of the GPS requirement, finding that it was not a search because the State did not physically trespass upon plaintiff's property to install the GPS unit on the food truck. The circuit court also held that, even if the GPS requirement constituted a search, it was not unreasonable. Citing *New York v. Burger*, 482 U.S. 691 (1987), the court held that warrantless inspections of closely regulated businesses, such as food services, must meet three criteria to be constitutionally valid: (1) there must be a substantial governmental interest that informs the regulatory scheme permitting the warrantless inspection, (2) the warrantless inspection must be necessary to further the purpose of the regulatory scheme, and (3) the regulatory scheme must provide a constitutionally adequate substitute for a warrant. The circuit court held the GPS requirement satisfied the *Burger* test because the City has a substantial interest in ensuring food safety and must know the location of food trucks to be able to make inspections. Further, the court held that food trucks have no expectation of privacy as to their location and, therefore, there is no reason why the City could not make compliance with the GPS requirement a condition of plaintiff's licensure.

¶ 11 The appellate court affirmed the circuit court's grant of summary judgment. 2017 IL App (1st) 163390. Addressing plaintiff's substantive due process challenge to the 200-foot rule, the appellate court held that a food truck owner's right to conduct its business on public property, *i.e.*, the streets of Chicago, is not a fundamental right for substantive due process purposes and, thus, the 200-foot rule need only pass the rational basis test to be valid. *Id.* ¶ 26. After thoroughly examining each of plaintiff's arguments, the court upheld the 200-foot rule "as a rational means of promoting the general welfare of the City of Chicago." *Id.* ¶ 32. The court rejected plaintiff's protectionist argument, holding that the City has a legitimate interest in protecting brick-and-mortar restaurants because they bring critical economic benefits to the City, including the payment of taxes and other fees, that exceed any similar expenditure by food trucks. Thus, the appellate court concluded that the 200-foot rule strikes an appropriate balance between the interests of brick-and-mortar restaurants and their food truck competitors.

¶ 12 As to the GPS requirement, the appellate court held that it is not a search. The appellate court concluded that, because food trucks do not have a constitutional right to conduct business on the streets and sidewalks of Chicago, the City may require food trucks to install a GPS device as a condition of licensure.

¶ 13 LMP petitioned for leave to appeal in this court, which we granted. We also allowed the Illinois Policy Institute, Restore the Fourth, Inc., the Pacific Legal Foundation, and the Illinois Food Truck Owners Association, together with the National Food Truck Association and CATO Institute, to file *amicus curiae* briefs in support of plaintiff. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). In addition, we allowed the Illinois Restaurant Association to file an *amicus curiae* brief in support of the City. *Id.*

¶ 14                                            ANALYSIS

¶ 15 Plaintiff asks that we reverse the appellate court's affirmance of the circuit court's grant of summary judgment to the City and find, instead, that sections 7-38-115(f) and 7-38-115(*l*) of the Code are constitutionally invalid. Whether a municipal code provision or ordinance violates the constitution is a question of law that we review *de novo*, applying the same rules of construction as would govern the construction of statutes. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008). Like statutes, municipal code provisions are presumed constitutional,

and the burden of rebutting that presumption rests with the challenging party, who must demonstrate a clear constitutional violation. *Id.* A reviewing court must affirm the constitutionality of a statute or ordinance if it is "reasonably capable of such a determination" and resolve any doubt as to the statute's construction in favor of its validity. *People v. One 1998 GMC*, 2011 IL 110236, ¶ 20.

¶ 16                                    *The 200-Foot Rule*

¶ 17     Plaintiff argues that section 7-38-115(f) is unconstitutional because it violates its substantive due process rights guaranteed by article I, section 2, of the Illinois Constitution. Ill. Const. 1970, art. I, § 2. Substantive due process bars arbitrary governmental action that infringes upon a protected interest. *People v. Pepitone*, 2018 IL 122034, ¶ 13. The nature of the protected interest determines the level of scrutiny. Where, as here, the challenged provision does not affect a fundamental right, the rational basis test applies. *Id.* ¶ 14. When applying the rational basis test, our inquiry is twofold: we must determine whether there is a legitimate governmental interest behind the legislation and, if so, whether there is a reasonable relationship between that interest and the means the governing body has chosen to pursue it. See *People v. Reed*, 148 Ill. 2d 1, 11 (1992). The party challenging a legislative enactment as failing rational basis review bears the burden of proving by clear and affirmative evidence that the enactment constitutes arbitrary, capricious, and unreasonable legislative action; that there is no permissible interpretation that justifies its adoption; or that it does not promote the safety and general welfare of the public. *Triple A Services, Inc. v. Rice*, 131 Ill. 2d 217, 226 (1989). Further, when determining whether a legislative enactment survives rational basis review, courts do not consider the wisdom of the enactment or whether it is the best means of achieving its goal. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 125 (2004); *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117, 124 (1998); *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 147 (2003) ("The judgments made by the legislature in crafting a statute are not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."). With these standards in mind, we now consider the constitutional validity of the 200-foot rule in section 7-38-115(f) of the Code.

¶ 18     Both brick-and-mortar restaurants and food trucks are important businesses that bring significant benefits to the City. However, they do so in very different ways. Brick-and-mortar restaurants bring stability to the neighborhoods in which they are located. The restaurants pay property taxes and have a vested interest in seeing that their neighborhoods continue to grow and thrive so that their own businesses will flourish. Moreover, in certain areas of the City, such as Greektown, restaurants are a vibrant part of the community and bring a long-term sense of cohesiveness and identity to the area. In this way, brick-and-mortar restaurants can help establish certain parts of the City as tourist destinations in and of themselves, thereby increasing revenue for the City and improving stable economic growth.

¶ 19     In contrast, while food trucks bring a life and energy to the City that is all their own, they simply do not have the same long-term, stabilizing effect on City neighborhoods as brick-and-mortar restaurants do. Indeed, the business model of food trucks and a good deal of their appeal are built on mobility, not stability: The trucks may be in the City one day and in Evanston or Aurora the next.

¶ 20    The City has a legitimate governmental interest in encouraging the long-term stability and economic growth of its neighborhoods. The 200-foot rule, which helps promote brick-and-mortar restaurants and, thus, neighborhood stability, is rationally related to this legitimate interest. Importantly, too, in 2012, when the City passed Ordinance 2012-4489, section 7-38-117 was added to the Code. This section created a number of food truck stands, *i.e.*, designated areas along the public way where food trucks are permitted to park without being subject to the 200-foot rule. Thus, the City has not entirely banned food trucks. Rather, it has created a regulatory scheme that attempts to balance the interests of food trucks with the need to promote neighborhood stability that is furthered by brick-and-mortar restaurants.

¶ 21    Plaintiff contends, however, that the 200-foot rule unreasonably and arbitrarily infringes on its constitutionally protected interest to pursue a trade, occupation, or profession. Citing remarks made by Mayor Rahm Emanuel and several aldermen when Ordinance 2012-4489 was introduced, plaintiff claims that the sole purpose for the proximity restriction is impermissible protectionism, because it does not allow food trucks to trade freely within the marketplace and, instead, shields brick-and-mortar restaurants from competition. Plaintiff maintains that protecting brick-and-mortar restaurants from food truck competition is not a legitimate interest. In support of this contention, plaintiff relies principally on *Chicago Title & Trust Co. v. Village of Lombard*, 19 Ill. 2d 98, 100 (1960).

¶ 22    In *Chicago Title & Trust*, the plaintiffs sought a permit from the Village of Lombard to construct a new gas station on land that had been purchased. Although the property was zoned for this use, the Village denied the permit based on a municipal ordinance providing that " 'no filling station may be erected on a lot within 650 feet of any lot upon which a filling station, licensed under the provisions of this ordinance, is in operation.' " *Id.* The plaintiff alleged that the proximity restriction in the ordinance was arbitrary and unreasonable. The Village, however, claimed that the proximity restriction promoted the public's health and safety by limiting the number of gas stations within a 650-foot radius. *Id.* at 101. The court invalidated the ordinance, stating that it could not "find on this record a rational basis for the restriction, and we agree with the court below that it is arbitrary and unreasonable." *Id.* at 107.

¶ 23    Plaintiff's reliance on *Chicago Title & Trust* is misplaced. The case is distinguishable from the present case for several reasons. First, the ordinance in *Chicago Title & Trust* unduly infringed upon a protected property interest by preventing a property owner from constructing a gas station on his land even though the property was zoned to permit that use. In the case before us, however, plaintiff, like all food trucks, does not own the land on which it operates. Rather, it conducts its business on City streets along the public way. In *Triple A Services*, 131 Ill. 2d at 237, we rejected the notion that food trucks operating on the public way are vested with any degree of property interest and, therefore, held that food trucks have "no due process right against the city's subsequent regulation of those streets in the valid exercise of the city's police power." Thus, while plaintiff has a protected interest in pursuing its business and is licensed to conduct business on the streets of Chicago, plaintiff has no constitutionally protected property interest to conduct business at any particular location within the City. Further, the ordinance in the present case does not restrict new restaurants from locating near existing restaurants or prevent land owners from using their property for a purpose allowed by existing zoning laws. Instead, the ordinance prevents mobile food trucks from parking adjacent to brick-and-mortar restaurants.

¶ 24    *Chicago Title & Trust* also differs from the present case in another important respect. In *Chicago Title & Trust*, the village was unable to show that any legitimate governmental interest was advanced by the proximity restriction. Although the village claimed the ordinance promoted the health and safety of its residents, the record contained no evidence to indicate that gas stations located in close proximity to each other had any adverse effect on health or safety. *Chicago Title & Trust*, 19 Ill. 2d at 104-05. In fact, the court noted that several existing gas stations within the village were located within 650 feet of each other with no ill effect on health or safety and that the ordinance did not place any restrictions on these gas stations. *Id.* at 106-07. Thus, the ordinance did nothing more than advance an arbitrary preference for one similarly situated business over another. *Id.* at 107. In contrast, in this case, there are very real differences between brick-and-mortar restaurants and food trucks and in the effects they have on City neighborhoods. It is not irrational or arbitrary for the City to take this reality into account when crafting a regulatory scheme.

¶ 25    A case more on point to the present one is *Triple A Services*, in which this court upheld a Chicago ordinance that prohibited food trucks from conducting business within a certain section of the City identified as the "Medical Center District." *Triple A Services*, 131 Ill. 2d at 223. Applying the rational basis test, we held that the City had the power to regulate the use of its streets for private gain and, therefore, had the authority to prohibit food trucks from operating in the medical district. *Id.* at 229. Moreover, we found that the prohibition was rationally related to the City's legitimate interest in ensuring that emergency vehicles, medical personnel, and medical clients had easy access to the medical facilities; in enhancing the appearance of the district; and in promoting sanitary conditions within the area. *Id.* at 232. Thus, we upheld the ordinance as constitutionally valid. *Id.* at 236. Similarly, in the present case, the City has a legitimate interest in ensuring the long-term viability of its neighborhoods, an interest that food trucks do not further.

¶ 26    In sum, we find that plaintiff has not met its considerable burden of showing that the 200-foot rule is an arbitrary and unreasonable municipal action and that no permissible interpretation justifies its adoption. The 200-foot rule is not unreasonable because it is a part of a regulatory scheme that seeks to balance the interests of food trucks with the City's need to advance the stability and long-term economic growth of its neighborhoods. Having found that the 200-foot rule is rationally related to a legitimate governmental interest, we need not consider the City's alternative rationales for upholding the constitutionality of the 200-foot rule.

¶ 27                                    *The GPS Requirement*

¶ 28    Plaintiff maintains, as it did in the courts below, that section 7-38-115(*l*) of the Code (Chicago Municipal Code § 7-38-115(*l*) (amended July 25, 2012)) is constitutionally invalid. This provision, which was added to the Code by Ordinance 2012-4489, requires food trucks to be equipped with a permanently installed functioning GPS device "which sends real-time data to any service that has a publicly-accessible application programming interface (API)." *Id.* The GPS device, therefore, transmits the food truck's location to the service provider and, according to the City of Chicago Rules for Mobile Food Vendors and Shared Kitchens

(Rules),[2] must do so whenever the food truck is serving the public or being serviced at a commissary. Also, the Rules state that the service provider must maintain "at least six (6) months of historical location information." Chi. Dep't Pub. Health, City of Chicago Rules: Mobile Food Vendors and Shared Kitchens 13 (updated Jan. 1, 2019), https://www.chicago.gov/content/dam/city/depts/dol/rulesandregs/Mobile%20Food%20 Vendor%20and%20Shared%20Kitchen%20Rules%20Final_01.01.18.pdf [https://perma.cc/ Y7H6-8S8P] (Rule 8(C)).

¶ 29    Although section 7-38-115(*l*) and the Rules require the service provider to have a "publicly-accessible" API, there is no requirement that the location data be made available to the public. The Rules specifically state that, if the food truck so chooses, their service provider may deny public access to the food truck's location data. In addition, in accord with Rule 8(B), the City will not request location information from a GPS service provider unless:

> "(1) The information is sought to investigate a complaint of unsanitary or unsafe conditions, practices, or food or other products at the vehicle;
>
> (2) The information is sought to investigate a food-related threat to public health;
>
> (3) The information is sought in connection with establishing compliance with Chapter 7-38 of the Municipal Code of Chicago or the regulations promulgated thereunder;
>
> (4) The information is sought for purposes of emergency preparation or response;
>
> (5) The City has obtained a warrant or other court authorization to obtain the information; or
>
> (6) The City has received permission from the licensee to obtain the information."
> *Id.* (Rule 8(B)).

¶ 30    Plaintiff contends that the requirement that it install a GPS unit in its food truck and transmit its location to a service provider constitutes a warrantless search in violation of the Illinois Constitution. Our state constitution, like our federal constitution, prohibits only those searches that are unreasonable. Article I, section 6, of the Illinois Constitution provides, in part: "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means." Ill. Const. 1970, art. I, § 6. Under the limited lockstep doctrine, we interpret the search and seizure clause in our state constitution using the same standards as are used in construing its federal counterpart, unless a narrow exception applies. *People v. Fitzpatrick*, 2013 IL 113449, ¶ 28.

¶ 31    It is plaintiff's contention that, because the City requires food trucks to install a GPS device on their vehicles as a condition of their licensure, there is no voluntary consent to this physical intrusion on their private property and, therefore, the GPS requirement is a search pursuant to the property-based framework in *United States v. Jones*, 565 U.S. 400 (2012). See also *El-Nahal v. Yassky*, 835 F.3d 248, 259 (2d Cir. 2016) (Pooler, J., concurring in part and dissenting in part). Plaintiff also asserts that the GPS requirement is a search pursuant to *Katz v. United States*, 389 U.S. 347 (1967), because it intrudes on plaintiff's reasonable expectation of

---

[2]The City supplemented the record with a copy of the updated City of Chicago Rules concerning Mobile Food Vendors and Shared Kitchens that issued on January 1, 2019.

privacy. Plaintiff contends that the search effected by the GPS requirement is unreasonable and, therefore, violates article I, section 6, of the Illinois Constitution.

¶ 32      The cases plaintiff cites in support of its claim that the GPS requirement effects a search are distinguishable from the case at bar. Both *Jones* and *Katz* were criminal cases. In *Jones*, the government, without a warrant and unknown to the defendant, placed a GPS device on the defendant's private car to track his whereabouts over a period of several weeks. *Jones*, 565 U.S. at 402-03. The Court held that the GPS device was an intrusion on the defendant's private property and the long-term monitoring it permitted constituted a search within the meaning of the fourth amendment. *Id.* at 404. In *Katz*, the government, without a warrant, attached an electronic monitoring device to a public phone booth that the government believed the defendant was using for his drug trade. *Katz*, 389 U.S. at 348. The government then listened in on the defendant's conversations, and the information obtained was used against defendant at trial. *Id.* On appeal, the United States Supreme Court found that the monitoring device was a search even though the phone booth was not the defendant's private property. *Id.* at 353. The Court ruled it a search because the defendant had a reasonable expectation of privacy in his phone conversations. *Id.*

¶ 33      The situation here is very different. The City requires food truck owners to install GPS devices on their vehicles as a condition of their license to operate on the streets of Chicago. The GPS device does not transmit the food truck's location data directly to the City, nor does plaintiff allege that the City has ever obtained plaintiff's location data from its service provider without obtaining a warrant. In fact, plaintiff admits that, at present, the City has *never* requested location data from any food truck's service provider. In addition, plaintiff also admits that food trucks generally post their location on social media to attract customers. Thus, any expectation of privacy a food truck might have in its location is greatly diminished, if it exists at all.

¶ 34      Plaintiff contends that, because a food truck's service provider must maintain location records for six months, this long-term monitoring provides greater information about the food truck than its mere location and, because this information is accessible by the general public, the GPS requirement is "overbroad" and invalid. However, as we already explained above, the City has never requested location data from plaintiff's service provider. Plaintiff is simply incorrect when it contends that the GPS requirement mandates that location data be provided to the general public.

¶ 35      We are unable to find from the record or the cases cited by plaintiff that the GPS requirement effects a search of plaintiff's food truck within the meaning of article I, section 6, of the Illinois Constitution. Nevertheless, even if we were to assume, *arguendo*, that the GPS requirement constitutes a search, we would find it to be reasonable.

¶ 36      Food trucks operate within the food industry, which is traditionally closely regulated. Accordingly, "the warrant and probable-cause requirements, which fulfill the traditional Fourth Amendment standard of reasonableness for a government search [citation] have lessened application in this context." *Burger*, 482 U.S. at 702-03. The *Burger* Court held that warrantless inspections of highly regulated businesses will be deemed reasonable only if (1) there is a substantial government interest that informs the regulatory scheme under which the search is made, (2) the warrantless inspection is necessary to further the regulatory scheme, and (3) the regulatory scheme is a constitutionally adequate substitute for a warrant. *Id.*

Plaintiff agrees that the *Burger* standard for determining reasonableness is applicable in this case but argues that the test is not met. We disagree.

¶ 37   Plaintiff does not dispute that the City has a substantial interest in knowing a food truck's location and in having access to records regarding a food truck's movements and locations over a period of time. Knowing the location where a business is being operated is a basic necessity. The City needs to regularly inspect food service businesses for compliance with health and food safety regulations. This is easily accomplished at brick-and-mortar restaurants because they are licensed to operate at a specific location and are stationary. Food trucks, however, are mobile and move about the City. The GPS requirement provides the City with a means of obtaining a food truck's location to effectuate inspections. Also, the City has a legitimate interest in having a reliable means of locating a food truck in the event of a public health emergency.

¶ 38   Although plaintiff agrees that the *Burger* test's first criterion—substantial interest—is met, plaintiff contends that the GPS requirement does not meet the second *Burger* criterion because it is not "necessary" to further the regulatory scheme. According to plaintiff, since the location data has never been sought by the City and because the City could use less intrusive means to obtain a food truck's location, the GPS requirement is not necessary. However, as the City explained, relying on other means of obtaining a food truck's location, such as social media or simply phoning the food truck, has proven unreliable. Information on social media is often outdated or inaccurate, and food trucks, when busy, often fail to answer phone calls. Thus, the GPS system is the best and most accurate means of reliably locating a food truck, which is particularly important and necessary in the event of a serious health issue.

¶ 39   Finally, plaintiff argues that the third *Burger* criterion is not met because the regulatory scheme is not a constitutionally adequate substitute for a warrant. Plaintiff bases this claim on the assertion that the regulatory scheme requiring food trucks to be equipped with a GPS device is excessive because it requires the location information to be provided to the general public. However, as we explained earlier, plaintiff is simply incorrect. The GPS requirement does not require food trucks to make the location data transmitted to their service provider accessible to the public.

¶ 40   Because we find that the GPS requirement passes the *Burger* test, we find that it is not an unreasonable search and, therefore, passes constitutional muster.

¶ 41                                          CONCLUSION

¶ 42   Plaintiff has failed to establish that sections 7-38-115(f) and 7-38-115(*l*) of the Municipal Code of Chicago are unconstitutional. Accordingly, we affirm the judgment of the appellate court, which affirmed the circuit court's order granting summary judgment to the City of Chicago.

¶ 43   Affirmed.