2025 IL App (1st) 232174

No. 1-23-2174

Opinion filed March 24, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| DONALD A. ROBINSON, as Executor of the Estate of Albert C. Hanna, Deceased, and ADAM MROWKA, as Legal Guardian of Carol Mrowka, | ) ) ) | |
| | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs, | ) | Cook County |
| | ) | |
| v. | ) | No. 06 CH 19422 |
| | ) | |
| THE CITY OF CHICAGO, | ) | The Honorable |
| | ) | Anna H. Demacopoulos, |
| Defendant-Appellee | ) | Judge Presiding. |
| | ) | |
| (Donald A. Robinson, as Executor of the Estate of Albert C. Hanna, Deceased, Plaintiff-Appellant). | ) ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justices Lavin and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff, Donald A. Robinson, as executor of the estate of Albert C. Hanna, appeals the trial court's granting of a motion for summary judgment in favor of the defendant, the City of Chicago (City), on the plaintiff's claims that the City's enactment of an ordinance designating the "Arlington-Deming District" as a Chicago landmark violated his rights to substantive due process and equal protection. We affirm the trial court's granting of summary judgment.

I. BACKGROUND

The City has, through the Chicago Landmarks Ordinance (Chicago Municipal Code §§ 2-120-580 to 2-120-920), established a procedure to protect and encourage the continued use of, *inter alia*, "districts *** within the City of Chicago eligible for designation by ordinance as 'Chicago Landmarks.' "[1] Chicago Municipal Code § 2-120-580 (added Mar. 11, 1987). This includes the creation of a commission on Chicago landmarks (commission) comprised mostly of professionals in the disciplines of history, architecture, historic architecture, planning, archaeology, real estate, historic preservation, or related fields. *Id.* § 2-120-600. Among the commission's various responsibilities are identifying districts of historic or architectural significance, holding hearings, and "recommend[ing] that the city council designate by ordinance *** districts *** as official 'Chicago Landmarks', if they qualify as defined hereunder." Chicago Municipal Code § 2-120-610(1), (2) (amended May 17, 2000).

To qualify for designation as a Chicago landmark, the city council must ultimately determine, following a preliminary determination by the commission, that a proposed district meets two or more of seven criteria enumerated in the ordinance. Chicago Municipal Code § 2-120-620 (added Mar. 11, 1987); § 2-120-630 (amended Feb. 26, 1997); § 2-120-700 (amended Feb. 26, 1997). Relevant here, one criterion is a district's "value as an example of the architectural, cultural, economic, historic, social, or other aspect of the heritage of the City of Chicago, State of Illinois, or the United States." Chicago Municipal Code § 2-120-620(1) (added Mar. 11, 1987). Another criterion is a district's "exemplification of an architectural type or style distinguished by

---

[1]For simplicity, and because it is the nature of the landmark designation at issue in this case, we refer only to "districts" eligible for landmark status. In full, the Chicago Landmarks Ordinance states that "areas, districts, places, buildings, structures, works of art, and other similar objects within the City" may be eligible for landmark status. See Chicago Municipal Code § 2-120-580 (added Mar. 11, 1987).

innovation, rarity, uniqueness, or overall quality of design, detail, materials or craftsmanship." *Id.* § 2-120-620(4). And a third criterion is a district's "representation of an architectural, cultural, economic, historic, social, or other theme expressed through distinctive areas, districts, places, buildings, structures, works of art, or other objects that may or may not be contiguous." *Id.* § 2-120-620(6). If a district satisfies at least two enumerated criteria, it may be designated as a Chicago landmark if it also (1) "has a significant historic, community, architectural or aesthetic interest or value," (2) "the integrity of which is preserved in light of its location, design, setting, materials, workmanship, and ability to express such historic, community, architectural or aesthetic interest or value." Chicago Municipal Code §§ 2-120-630, 2-120-700 (amended Feb. 26, 1997).

¶ 5        Around the timeframe of 2004 to 2007, the area of Lincoln Park that ultimately became the "Arlington-Deming District" (District) came under the commission's consideration as a district that potentially met the above requirements for designation as a Chicago landmark. The District is comprised roughly of the 400 and 500 blocks of West Arlington Place and West Deming Place, the 2400 block of North Geneva Terrace, and the 2400 and 2500 blocks of North Orchard Street. Following a study in conjunction with the City's department of planning and development, the adoption of a written preliminary landmark designation report addressing reasons why the District satisfied the requirements for landmarking, the solicitation of written consent from property owners within the District, and the conducting of a public hearing, the commission ultimately made a formal recommendation to the city council that it adopt an ordinance designating the District as a Chicago landmark.

¶ 6        On September 7, 2007, the city council accepted the commission's recommendation and enacted the ordinance at issue in this case, whereby it designated the District as a Chicago landmark. In finding that the District satisfied the requirements of the Chicago Landmarks

Ordinance as set forth above, the city council expressly incorporated the following recitals into the ordinance designating the District as a landmark:

"WHEREAS, pursuant to the procedures set forth in the Municipal Code of Chicago (the 'Municipal Code'), §§ 2-120-130 through -690, the Commission *** has determined that the Arlington-Deming District *** meets three criteria for landmark designation as set forth in § 2-120-620(1), (4), and (6) of the Municipal Code; and

WHEREAS, the District exemplifies high-style and high-quality residential and institutional architecture constructed on Chicago's North Side lakefront during the late 19th and early 20th centuries as the City expanded outward into sparsely-populated suburban areas and the northern portion of the City's Lincoln Park neighborhood became a visually-attractive, densely-populated middle- and upper-middle-class neighborhood by World War II; and

WHEREAS, the District is one of Chicago's handsomest and finest-quality groupings of small-scale single-family houses and row houses, coach houses, larger 'flat' buildings, taller apartment buildings, apartment hotels, and institutional buildings, all significant building types in Chicago history, from the late 19th and early 20th centuries; and

WHEREAS, the District is distinctive for the fine detailing, craftsmanship, and architectural expression of its buildings, which exemplify the importance of historic architectural styles, including Italianate, Second Empire, Queen Anne, Romanesque, Richardsonian Romanesque, Classical Revival, Arts and Crafts, Italian Romanesque, Tudor Revival, Medieval Revival, and Art Deco, to the historic development of Chicago residential neighborhood architecture; and

WHEREAS, the District's buildings are noteworthy for their craftsmanship and high-

- 4 -

quality use of traditional building materials, including brick, stone, decorative metal, wood, and terra cotta; and

WHEREAS, the District exemplifies the importance of high-style, high-quality historic residential neighborhoods, an important theme in the history of Chicago; and

WHEREAS, the District displays a distinct visual unity based on period of construction, building setbacks, overall building designs, size, use of building materials, and overall detailing; and

WHEREAS, the District and its streetscapes creates a distinctive and recognizable sense of place within the larger Lincoln Park neighborhood and the City; and

WHEREAS, the District retains more than sufficient physical integrity to express its 'historic, community, architectural, or aesthetic interest or value' as required by § 2-120-630 of the Municipal Code, with its buildings retaining their original location, overall design, historic building materials, and the great majority of significant exterior details; and

WHEREAS, on August 8, 2007, the Commission adopted a resolution recommending to the City Council of the City of Chicago that the District be designated as a Chicago Landmark."

Additionally, the ordinance states that "[t]he significant historical and architectural features of the District, for purposes of § 2-120-740 of the Municipal Code, are all exterior elevations, including rooflines, visible from the right away," along with several coach houses at specific addresses.

¶ 7     The present lawsuit was first filed on September 18, 2006, during the process in which the District was under consideration for preliminary landmark status by the commission. The

plaintiff,[2] who owned a single-family residence within the proposed District, filed his initial complaint as a facial and as-applied challenge to the constitutionality of the Chicago Landmarks Ordinance. In February 2007, the plaintiff filed a first amended complaint that challenged the constitutionality of the Chicago Landmarks Ordinance on grounds of vagueness and as an improper delegation of legislative authority to the commission. The plaintiff also raised challenges to the application of the Chicago Landmarks Ordinance to his property as violating his rights to equal protection and substantive due process.

¶ 8        After the trial court dismissed the first amended complaint, the plaintiff appealed, bringing this case before us for the first time. See *Hanna v. City of Chicago*, 388 Ill. App. 3d 909 (2009) (*Hanna I*). In *Hanna I*, we held that the first amended complaint was legally sufficient to state a challenge to the constitutionality of the Chicago Landmarks Ordinance, and we remanded the case for further proceedings. *Id.* 917-20. We did not reach the merits of the plaintiff's equal protection or substantive due process claims in that opinion. *Id.* at 920.

¶ 9        Following remand of *Hanna I*, the plaintiff eventually filed a third amended complaint that was substantively the same as the first amended complaint but also raised a challenge that the City's designation of the District as a landmark was unconstitutionally vague. The trial court granted summary judgment in favor of the City on those counts of the third amended complaint that raised vagueness challenges to the Chicago Landmarks Ordinance and to the designation of the District as a landmark, as well as on those counts challenging the Chicago Landmarks Ordinance as an unconstitutional delegation of legislative authority to the commission. The trial

---

[2]Albert C. Hanna was plaintiff in this case until his death in April 2020, after which time the executor of his estate was substituted as plaintiff. We will continue to refer to both simply as "the plaintiff." Earlier proceedings also involved a co-plaintiff, Carol C. Mrowka, who raised similar challenges involving the City's designation of the East Village Landmark District as a Chicago landmark. Those claims are not part of this appeal and will not be further referenced.

court also granted the City's motion to dismiss the plaintiff's equal protection and substantive due process claims on grounds of legal insufficiency.

¶ 10    This brought the case before us for the second time. See *Hanna v. City of Chicago*, 2013 IL App (1st) 121701-U (*Hanna II*). In *Hanna II*, we affirmed summary judgment in favor of the City on all the plaintiff's constitutional claims involving vagueness and delegation of authority. *Id.* ¶ 53. However, we reversed the dismissal of the equal protection and substantive due process claims, holding that the claims pled were legally sufficient to state a cause of action. *Id.* ¶¶ 55-64.

¶ 11    Following remand from *Hanna II*, the trial court granted a motion by the City for judgment on the pleadings on the plaintiff's equal protection and substantive due process claims. The case then came before us for a third time. See *Hanna v. City of Chicago*, 2017 IL App (1st) 160493-U (*Hanna III*). We again reversed and reiterated our previous holding that the facts pled in the third amended complaint were factually and legally sufficient to advance the case beyond the pleading stage. *Id.* ¶¶ 12-28.

¶ 12    Following remand from *Hanna III*, the parties proceeded to conduct discovery. Eventually, the City filed a motion for summary judgment involving the same substantive due process and equal protection claims involved in our prior appeals. The City argued in that motion that the rational basis test applied to both of these constitutional claims. It argued that this standard was satisfied in this case, as the undisputed facts demonstrated that many conceivable reasons existed to support of the city council's determination that the District was appropriate for designation as a Chicago landmark and that such designation reasonably furthered the City's legitimate interest in historic preservation.

¶ 13    In response, the plaintiff argued that genuine issues of material fact existed that prevented summary judgment on any of its claims. The plaintiff first argued that this court had made

statements in *Hanna II* that constituted a law-of-the-case holding that, provided the plaintiff produced evidence on the allegations pled, would raise a sufficient issue of fact for trial on the claimed constitutional violations. The plaintiff argued alternatively that even applying rational basis review, an issue of fact existed that the ordinance establishing the District was arbitrary and violated the guarantees of both substantive due process and equal protection in the Illinois constitution. The plaintiff urged the trial court to reject the City's argument that its ordinance could be sustained as long as the court could conceive of or imagine any set of facts about the District that would justify its designation as a landmark. Instead, the plaintiff argued, the motion should be denied unless it could be shown that no fact issue existed about whether the District met the requirements that the City had found, via its enactment of the Chicago Landmarks Ordinance, warranted historic preservation.

¶ 14       To show the existence of an issue of fact, the plaintiff submitted lengthy affidavits and reports from three expert witnesses in the fields of architectural preservation and urban planning. The first affidavit was by Gary L. Cole, an architect who specializes in the field of historic preservation. It was 76 pages and 446 paragraphs in length, and multiple reports and other documents were also attached. Cole's report includes a summary of his opinions, which states that in designating the area at issue as a historic district, "the City applied the Landmarks Ordinance's landmarking requirements in a manner that was both arbitrary and inconsistent, and without any reasonable basis for [the District's] historic designation." Specifically, the report charged that the city council improperly designated the area as a historic district by improperly applying the substantive requirements of the Chicago Landmarks Ordinance, when it evaluated the properties within the District and unreasonably claimed that, collectively, these properties expressed a significant theme that justified designating this non-historic area as a historic district.

¶ 15 The plaintiff's second affidavit was by John S. Garner, a former professor of architecture at the University of Illinois at Urbana-Champaign and previous chair of its division of architectural history and preservation. His affidavit was 44 pages and 298 paragraphs in length, plus attached reports. In it, he similarly undertakes a detailed rebuttal of the City's purported reasons for finding that the District satisfies the requirements of the Chicago Landmarks Ordinance and explains why its reasons were "inaccurate" and based on "a factual misrepresentation of the [District's] properties and setting." He expresses the opinion that from "an architectural and preservation perspective, there was no reasonable basis to designate the [District] as a Chicago landmark" and thus "such enactment was arbitrary."

¶ 16 The plaintiff's third affidavit was by George V. Kisiel, an architect and certified planner. His affidavit was 52 pages and 155 paragraphs in length, plus reports. His summary opinion is that there are other areas of the City that display similar characteristics as the District that are not designated as landmark districts; that the application of the Chicago Landmarks Ordinance in the designation of the District disproportionately burdens property owners within those areas by imposing restrictions on development that are not applied to similarly situated properties; that there is no reasonable basis for treating the District differently than similarly situated areas throughout the City; and that application of the Chicago Landmarks Ordinance in the designation of the District has a negative effect on the ability to increase the amount of affordable housing in the City generally and in the specific "low-minority, low-poverty, well-served areas of the City" where the District is located.

¶ 17 The trial court granted the City's motion for summary judgment. In doing so, it described as "unfounded" the plaintiff's assertions that the City had not faithfully and credibly applied the criteria of the Chicago Landmarks Ordinance in designating the District as a landmark. The trial

court applied the rational basis test to the plaintiff's claims. It found "no question that the government has a legitimate interest in the preservation and protection of architecturally significant buildings, structures, and areas."

¶ 18    It also found that "the method chosen to protect or further the City's interest in preserving architecturally significant buildings is reasonable and there are rational bases as to the application of the Landmarks Ordinance to the [District]." It cited the fact that community groups within the area had requested the alderman seek this designation for the District. It also cited the fact that multiple witnesses had testified on behalf of the City that the District "encapsulated important architectural aspects deeming [it] worthy of historic landmarking," based on its "represent[ing] a larger theme of residential development in Lincoln Park," its having buildings that "have retained the physical characteristics that define their historic significance," its "captur[ing] the north side's development during the representative period," and its "exhibit[ing] an urban visual character with the contrasting masonry row homes and mansions."

¶ 19    The plaintiff thereafter filed a timely notice of appeal and now challenges the trial court's granting of the City's motion for summary judgment.

¶ 20                                    II. ANALYSIS

¶ 21    Preliminarily, we address the argument with which the plaintiff leads on appeal and then uses as a framework for his subsequent arguments. As in two of his prior appeals, he again relies on the law of the case doctrine. See *Hanna II*, 2013 IL App (1st) 121701-U, ¶¶ 17-22; *Hanna III*, 2017 IL App (1st) 160493-U, ¶ 12-28. That doctrine bars relitigation of an issue that has already been decided in the same case, such that the resolution of an issue presented in a prior appeal becomes binding and controls upon remand in the trial court below and in any subsequent appeal to the appellate court. *Hanna III*, 2017 IL App (1st) 160493-U, ¶ 14. In the present appeal, the plaintiff

asserts that, in *Hanna II*, this court "ruled that the allegations in the [third amended] complaint, if proven, are sufficient to overcome the rational basis test." See *Hanna II*, 2013 IL App (1st) 121701-U, ¶¶ 62-64. He also argues that we reaffirmed this ruling in *Hanna III*. See *Hanna III*, 2017 IL App (1st) 160493-U, ¶¶ 17, 25. Proceeding from this contention, he argues that because he put on evidence as to each of the allegations of his complaint that we referenced in those cases as legally sufficient, he has raised triable issues of fact. He contends that the trial court disregarded our ruling in contravention of the law of the case doctrine when it entered summary judgment for the City.

¶ 22     We find this law of the case argument to be without merit. In both *Hanna II* and *Hanna III*, the extent of our holdings was that the substantive due process and equal protection allegations in the third amended compliant were sufficient to survive motions brought under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)). *Hanna II* involved a motion to dismiss for legal insufficiency under section 2-615(a) (*id.* § 2-615(a)), and *Hanna III* involved a motion for judgment on the pleadings under section 2-615(e) (*id.* § 2-615(e)). In neither of these cases were we presented with the issue—nor did we rule—that the allegations of the third amended complaint would be sufficient to overcome the rational basis test at future stages of the case. Specifically, our recognition that the third amended complaint was legally sufficient to move beyond the pleading stage was not a holding that the same claims would later withstand summary judgment, which is a more demanding stage of litigation wherein "there must be evidence, as opposed to mere allegations," establishing a genuine issue of material fact for trial. *Towner v. Board of Education of Chicago*, 275 Ill. App. 3d 1024, 1031 (1995); accord *People ex rel. Stephen B. Diamond, P.C. v. Henry Poole & Co.*, 2023 IL App (1st) 220195, ¶ 36 ("a court may find the pleadings sufficient to surpass a motion to dismiss but, after review of affidavits and supporting

documentation, may later find the facts supporting the cause of action insufficient to surpass summary judgment"). Accordingly, we review this appeal under the legal principles ordinarily applicable to summary judgment and rational basis review of the constitutionality of ordinances.

¶ 23    On the merits, the plaintiff argues that summary judgment was improperly entered in favor of the City in this case. He argues that he has demonstrated, through the detailed opinions of three highly qualified experts in the field of historic preservation, why the District fails to satisfy any of the eligibility requirements for designation as a landmark under the Chicago Landmarks Ordinance; why the City's proffered justifications for designating the District as a landmark have no basis in fact or accepted principles of historic preservation; and why landmark designation is detrimental to property owners and neighborhoods. Also, he cites evidence that the District was designated for landmarking only after an earlier attempt by the City to "downzone" that same area was invalidated and that the City's motive was never preserving supposedly historic features of the District. The plaintiff also cites evidence showing that a majority of property owners within the District opposed its designation as a landmark. He argues that the trial court overlooked this extensive evidence and misapplied the proper legal standards when it granted summary judgment.

¶ 24    This court undertakes *de novo* review of both a trial court's granting of a motion for summary judgment (*Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 146 (2003)) and a challenge to the constitutionality of a municipal ordinance, which presents a question of law. *LMP Services, Inc. v. City of Chicago*, 2019 IL 123123, ¶ 15.

¶ 25    A motion for summary judgment is properly granted when the pleadings, depositions, and admissions on file, together with the affidavits, if any, considered in the light most favorable to the non-moving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022). A

"material" fact is one that has the potential to affect the outcome of the case in light of the substantive law applicable to the claim. *Thai v. Triumvera 600 Naples Court Condominium Ass'n*, 2020 IL App (1st) 192408, ¶ 38. A genuine issue of material fact exists where facts are in dispute or where reasonable minds could draw different inferences from the undisputed facts. *GreenPoint Mortgage Funding, Inc. v. Hirt*, 2018 IL App (1st) 170921, ¶ 17.

¶ 26        The plaintiff acknowledges that his substantive due process and equal protection challenges to the ordinance designating the District as a Chicago landmark are subject to rational basis review. We have recognized previously that this was the appropriate standard of constitutional review for both claims in this case. See *Hanna II*, 2013 IL App (1st) 121701-U, ¶¶ 58-59. A challenge to a legislative enactment under either constitutional provision involves essentially the same rational basis analysis. *Kopf v. Kelly*, 2024 IL 127464, ¶ 55. In cases such as this, where no fundamental constitutional right or suspect classification is involved, a legislative enactment will satisfy rational basis review provided it bears a rational relationship to the purpose that the governmental body sought to accomplish in enacting it. *Id.* ¶¶ 36, 56.

¶ 27        "When applying the rational basis test, our inquiry is twofold: we must determine whether there is a legitimate governmental interest behind the legislation and, if so, whether there is a reasonable relationship between that interest and the means the governing body has chosen to pursue it." *LMP Services*, 2019 IL 123123, ¶ 17; accord *Hanna II*, 2013 IL App (1st) 121701-U, ¶ 59 (citing *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 125-26 (2004)).

"The party challenging a legislative enactment as failing rational basis review bears the burden of proving by clear and affirmative evidence that the enactment constitutes arbitrary, capricious, and unreasonable legislative action; that there is no permissible interpretation that justifies its adoption; or that it does not promote the safety and general welfare of the public."

*LMP Services*, 2019 IL 123123, ¶ 17 (citing *Triple A Services, Inc. v. Rice*, 131 Ill. 2d 217, 226 (1989)).

¶ 28    In this appeal, the plaintiff does not challenge the first aspect of the rational basis test, *i.e.*, the trial court's recognition generally that the preservation and protection of buildings, structures, and areas with historical and architectural significance is a legitimate government interest. See *Foster & Kleiser v. City of Chicago*, 146 Ill. App. 3d 928, 934 (1986) ("[t]he objective of preserving structures and areas of historic significance is a permissible governmental goal"); *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 129 (1978) (same). Rather, the plaintiff's argument goes to the second part of the rational basis test. He argues that he has presented sufficient evidence to raise a genuine issue of material fact that the City's designation of the District as a Chicago landmark has no reasonable relationship to its interest in preserving areas of the City with historic and architectural significance. He contends that he has shown this through evidence that the District does not actually satisfy any of the eligibility requirements established by the Chicago Landmarks Ordinance and that the City's proffered reasons for its designation do not reasonably support it.

¶ 29    In furtherance of this argument, the plaintiff principally relies on the evidence submitted through the affidavits of his expert witnesses that purport to rebut or disprove the findings of the city council that the District satisfies the requirements for designation as a Chicago landmark established by the Chicago Landmarks Ordinance. For example, as we referenced in the background above, one of the ordinance's eligibility criteria is a district's "value as an example of the architectural, cultural, economic, historic, social, or other aspect of the heritage of the City of Chicago, State of Illinois, or the United States." Chicago Municipal Code § 2-120-620(1) (added Mar. 11, 1987). In the ordinance designating the District as a Chicago landmark, the city council

stated that the District satisfied this criterion because

> "the District exemplifies high-style and high-quality residential and institutional architecture constructed on Chicago's North Side lakefront during the late 19th and early 20th centuries as the City expanded outward into sparsely-populated suburban areas and the northern portion of the City's Lincoln Park neighborhood became a visually-attractive, densely-populated middle- and upper-middle-class neighborhood by World War II."

We note that this statement in the ordinance mirrors the commission's findings of fact on this point in its preliminary landmark designation report, which it submitted to the city council, and the commission's report has its basis in the preliminary summary of information prepared by the City's department of planning and developing following its study of the proposed district.

¶ 30     The plaintiff's experts dispute the City's determination that the District satisfies this criterion. Garner states by affidavit that, to satisfy the ordinance's requirements, a district must be a "critical" part of the City; merely having old buildings or being a typical example of a greater pattern of urban development is insufficient. He states that to meet this criterion, a landmark district must be distinguished from other neighborhoods or districts that arose during the same period and that share similar characteristics; a landmark district "must have value in and of itself." Garner explains that the District fails to meet this criterion because it merely "displays a cross-section of largely typical residential architecture built sometime between the 1880s and the 1970s," which is true of much of the rest of Lincoln Park and other neighborhoods not designated by the City as historic districts. Unlike other historic districts, the District "represents no stand-alone achievement that in some way differentiates it from other parts of Lincoln Park or the City." Also, "the varying buildings of the [District] display a very noticeable contrast in terms of building material, style and scale." No significant events took place there. It is "simply a non-cohesive ensemble of old

residential buildings" that is neither unique or critical to the history of the City nor significant in and of itself.

¶ 31     Professor Cole's affidavit similarly includes a detailed explanation of why the City was incorrect in its determination that the District satisfies the above criterion. For example, he states that while some buildings in the District demonstrate higher examples of architectural styles, "most of the [District's] buildings are ordinary or mediocre examples of their architectural styles." He also asserts that the City's own database of historically significant buildings does not identify any single building within the District as " 'possess[ing] some architectural feature or historical association that makes [the property] potentially significant in the broader context of the City of Chicago, the State of Illinois, or the United States of America,' " which is the relevant geographic requirement to satisfy the above criterion.

¶ 32     The plaintiff's experts' affidavits go on to raise similar detailed challenges concerning the other enumerated criteria and requirements for designation as a landmark under the Chicago Landmarks Ordinance. See *supra* ¶¶ 4, 6. It would unnecessarily lengthen this decision to set forth their opinions on these points in detail. It is sufficient to state that they present similar fact-based challenges that the City misunderstood and thus misapplied the requirements of the Chicago Landmarks Ordinance under recognized standards of architectural and historic preservation.

¶ 33     Although this evidence is certainly fact-intensive, we reject the plaintiff's argument that it raises a genuine issue of material fact in this case involving rational basis review. The facts that the plaintiff's experts dispute all involve matters within the judgment of the city council as to whether this area of the City possesses sufficient historical and architectural value to warrant its designation as a Chicago landmark. Rational basis review simply does not permit this kind of fact-based evidentiary challenge to the judgments made by a legislative body when enacting legislation.

See *Arangold*, 204 Ill. 2d at 148 ("litigants may not challenge the factual underpinnings of \*\*\* legislative judgments under due process analysis").

¶ 34    While it is permissible on summary judgment for a plaintiff to submit evidence by way of affidavit to show that a legislative enactment is not rationally related to its intended purpose, a plaintiff cannot prevail on a constitutional challenge merely by showing that the legislative body that enacted it was mistaken in its legislative findings of fact. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 389 (1997) (citing *Bernier v. Burris*, 113 Ill. 2d 219, 229-30 (1986), and citing *United States v. Carolene Products Co.*, 304 U.S. 144, 153-54 (1938)). "Courts are not empowered to 'adjudicate' the accuracy of legislative findings," and a legislative body "is not required to convince [the] court of the correctness of its judgment." *Id.* at 389-90.

¶ 35    Accordingly, when "determining whether a statute satisfies the rational basis standard, a court does not engage in 'courtroom fact finding.' " *Piccioli v. Board of Trustees of the Teachers' Retirement System*, 2019 IL 122905, ¶ 20 (quoting *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117, 124 (1998)). A legislative decision or classification "does not need to be supported by evidence or empirical data." *Id.*; accord *People ex rel. Lumpkin*, 184 Ill. 2d at 124. " 'Under the rational basis test, *the court may hypothesize reasons for the legislation, even if the reasoning advanced did not motivate the legislative action.* [Citation.] If there is any conceivable basis for finding a rational relationship, the law will be upheld.' " (Emphasis in original.) *Piccioli*, 2019 IL 122905, ¶ 20 (quoting *People ex rel. Lumpkin*, 184 Ill. 2d at 124). Further, when determining whether a legislative enactment survives rational basis review, courts do not consider the wisdom of the enactment or whether it is the best means of achieving the goal of the legislative body that enacted it. *LMP Services*, 2019 IL 123123, ¶ 17.

¶ 36    We acknowledge that the plaintiff takes issue with many of the above principles that allow a

court to hypothesize reasons why an ordinance was enacted and that require a court to uphold an ordinance regardless of whether the evidence that actually motivated the city council to enact it was factually correct. He contends that this unfairly allows the District's designation as a landmark to stand if the court simply imagines a "counterfactual world" in which in which the District is architecturally and historically significant, even if it is not. He contends that it is not enough under rational basis review for a hypothetical justification for legislative action to be imagined; rather, he argues, it must have some factual support in the record and must be reasonable. He thus argues that he has at least raised a genuine issue of material fact as to whether the city council had a reasonable basis to designate the District as a landmark to survive summary judgment.

¶ 37    We are constrained to reject the plaintiff's arguments, as they are contrary to the well-established precedent governing rational basis review as set forth above. None of the cases cited by the plaintiff support the proposition that he can establish that an ordinance is unconstitutional by challenging the factual judgments of the legislative body that enacted it. Regardless of how strenuously the plaintiff and his experts dispute the factual accuracy of the city council's determination that the District met the requirements for landmark status, this simply is not a means by which the plaintiff can establish the unconstitutionality of the ordinance or show a genuine issue of material fact in this regard. See *Best*, 179 Ill. 2d at 389-90.

¶ 38    The City further identifies an additional reason why no genuine issue of material fact is raised by the plaintiff's experts' affidavit testimony that the city council failed to adhere to the requirements of the Chicago Landmarks Ordinance when it designated the District as a Chicago landmark. This is due to the rule that an ordinance enacted by a home rule municipality is not rendered unconstitutional simply because that municipality failed to comply with its own self-imposed ordinances when enacting it. *Condominium Ass'n of Commonwealth Plaza v. City of*

*Chicago*, 399 Ill. App. 3d 32, 43 (2010) (citing *Landmarks Preservation Council of Illinois v. City of Chicago*, 125 Ill. 2d 164, 179 (1988) and citing *Illinois Gasoline Dealers Ass'n v. City of Chicago*, 119 Ill. 2d 391, 404-05 (1988)). The City of Chicago is a home rule municipality and thus has broad powers of self-governance. See Ill. Const. 1970, art. VII § 6; *Landmarks*, 125 Ill. 2d at 178. The plaintiff's experts' criticisms of the City are that, when it designated the District as a Chicago landmark, it misunderstood or misapplied the requirements of an ordinance that it imposed upon itself, *i.e.* the Chicago Landmarks Ordinance. As this is not a basis for establishing that the ordinance designating the District as a landmark is unconstitutional, the plaintiff's experts' opinions on this point are insufficient to raise a genuine issue of material fact.

¶ 39        We note that the plaintiff challenged in his reply brief the City's assertion that the Chicago Landmarks Ordinance constitutes only a requirement that the City has imposed upon itself. The plaintiff argues that the City's adherence to the designation criteria of the Chicago Landmarks Ordinance is mandatory under a provision of federal law requiring that units of local government that have been certified to participate in certain historic preservation grant programs must "enforce[ ] appropriate State or local legislation for the designation and protection of historic property." 54 U.S.C. § 302503(a)(1) (2018). However, the plaintiff's argument that this provision of federal law applies in this instance is forfeited based on the fact that it is raised for the first time in his reply brief. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued [in an opening brief] are forfeited and shall not be raised in the reply brief"). We further find the argument forfeited on the basis that it is presented only in an undeveloped, cursory fashion that leaves the court with no real understanding as to how the plaintiff contends that this provision of federal law bears upon the facts of this case. *Vancura v. Katris*, 238 Ill. 2d 352, 369-70 (2010).

¶ 40        Apart from his experts' opinions challenging whether the District meets the requirements for

landmarking, the plaintiff contends also that other genuine issues of material fact exist showing that the City's true reason for designating the District as a landmark was unrelated to any interest in historic preservation. He contends that the City's efforts to designate the District as a landmark began only after a prior ordinance, whereby the City downzoned the same area from R5 to R4, was invalidated as unconstitutional in 2001. At the trial of that earlier case, one of the justifications that the City raised for the downzoning was the protection of the area's architectural and historical significance; however, the trial judge had found this reason to be "pretextual." The trial judge had further found that the City had been motivated to downzone the area only at the behest of a single citizen who was a leader of the Park West Community Association. The plaintiff contends that this same small group of influential residents who had previously sought downzoning had thereafter lobbied the alderwoman and other City officials to pursue landmarking status for the area as an "end-around" to the downzoning that had been invalidated. The plaintiff relatedly cites evidence that a majority of the property owners within the District (53 to 45) did not give consent to landmarking status but that the then-alderwoman had written a letter to the deputy commissioner of the landmarks division of the City's department of planning and development inaccurately stating that a majority of residents had expressed support for it.

¶ 41       We again conclude that this evidence demonstrates a genuine issue of material fact in this case involving rational basis review. As we stated above,

> "[a] party challenging a legislative enactment as failing rational basis review bears the burden of proving by clear and affirmative evidence that the enactment constitutes arbitrary, capricious, and unreasonable legislative action; that there is no permissible interpretation that justifies its adoption; or that it does not promote the safety and general welfare of the public." *LMP Services*, 2019 IL 123123, ¶ 17.

The evidence cited in the preceding paragraph simply falls far short of meeting this standard. We further note that when the trial judge in the downzoning case stated that the City's justification of preserving architecturally and historically significant structures was pretextual, he did so in the context of stating that landmarking was a more appropriate process that provided greater protections to property owners than downzoning. The trial judge stated:

> "If the City had been truly interested in conservation of such structures, that ought to have been accomplished by the landmark processes that are in place for that purpose. The court finds the City's assertion, regarding the relative ease with which downzoning can be accomplished over the apparently more onerous landmark process, entirely unpersuasive. Indeed, property owners—such as the plaintiff—who are entitled to rely upon the zoning of the property when they acquired it ought to be afforded the protections of the landmark process that the City here seeks to avoid."

Particularly in light of these comments by the trial judge, we do not believe any improper motive can be inferred from the fact that the landmarking process commenced within about three years of the invalidation of the downzoning. We further fail to see how any constitutional infirmity could arise from the facts that the landmarking process was initiated when a relatively small number of residents petitioned the alderwoman for it or that slightly less than half of the property owners consented to landmarking.[3] Accordingly, no genuine issue of material fact is shown by this evidence.

---

[3]The Chicago Landmarks Ordinances requires the commission to request that owners of property subject to landmarking consent in writing to the designation within 45 days. Chicago Municipal Code § 2-120-650 (amended Oct. 7, 1998). The effect of property owners' declining or failing to give consent is that the commission must conduct a public hearing on the proposed designation. *Id.* The ordinance further provides, "If 51 percent of the owners of the property in a district responding to the request for consent file written objections to designation, a recommendation of landmark designation of that district must be approved by the affirmative vote of six members of the commission." Chicago Municipal Code § 2-120-690 (amended Dec. 11, 1991).

¶ 42    The plaintiff argues that a genuine issue of material fact is raised with respect to his equal protection claim. Specifically, he contends that Kisiel's affidavit shows that other areas of the City—specifically the Kimbark-Blackstone and Woodlawn-Blackstone areas of the Hyde Park neighborhood—have not been burdened with the designation of being Chicago landmarks, despite possessing the same characteristics as those that purportedly caused the city council to designate the District as a landmark. He also contends that it is not constitutionally adequate to distinguish the District from these other areas of the City on the basis that a few influential residents of the District successfully persuaded City officials to pursue landmarking of the District, whereas no evidence showed that residents of these other areas did so.

¶ 43    The trial court below rejected the plaintiff's argument that an equal protection claim existed by virtue of the City's selecting the District for designation as a Chicago landmark, while not pursuing this status for other areas of the City with similar characteristics. We agree that equal protection concerns are not implicated in this context.

¶ 44    Under both state and federal law, the constitutional guarantee of equal protection requires the government to treat similarly situated individuals in a similar fashion. *Wauconda Fire Protection District v. Stonewall Orchards, LLP*, 214 Ill. 2d 417, 434 (2005). It does not prevent the government from drawing distinctions between different categories of people in enacting legislation, but it does prohibit the government from doing so based on criteria wholly unrelated to the legislation's purpose. *Id.* Important here, the guarantee of equal protection is not a requirement that the government craft legislation that aims to "solve all the evils of a particular wrong in one fell swoop." *Kopf*, 2024 IL 127464, ¶ 57. It may proceed one step at a time. *People v. Anderson*, 148 Ill. 2d 15, 31 (1992) (citing *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 367 (1985)).

¶ 45    The process of designating structures or areas of the City as landmarks under the Chicago Landmarks Ordinance strikes us as a particularly appropriate context in which the City may proceed "one step at a time" without offending principles of equal protection. The trial court cited evidence in the record that as of February 2011, the District was one of 53 landmark districts designated by the City. We take judicial notice that the City's website contains an updated version of the report, cited by the trial court, indicating that as of August 2024, the City has designated 62 landmark districts. It may always be the case that additional areas of the City can be identified that qualify for this designation but either have not yet or will never receive it for one reason or another. Regardless, this reflects a reasonable means of furthering the City's objective in the preservation of its historic areas and thus is not a violation of the plaintiff's right to equal protection.

¶ 46    Finally, the plaintiff argues that application of the "*La Salle* factors" demonstrates the existence of a genuine issue of material fact with respect to his as-applied claims. See *La Salle National Bank of Chicago v. County of Cook*, 12 Ill. 2d 40, 46-47 (1957); *Sinclair Pipe Line Co. v. Village of Richton Park*, 19 Ill. 2d 370, 378 (1960). These are factors that courts have identified as being potentially useful considerations in evaluating whether a zoning restriction, as applied to specific property, is unrelated to the public health, safety, and welfare (and is thus an invalid exercise of a municipality's police power).[4] See *Rockford Blacktop Construction Co. v. County of Boone*, 263 Ill. App. 3d 274, 279-80 (1994); *Harris Bank of Hinsdale v. County of Kendall*, 253 Ill. App. 3d 708, 714 (1993); accord *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 316-19 (2008). The factors include (1) the existing uses of nearby property, (2) the extent to which property values are diminished by the particular zoning restrictions, (3) the extent to which the

_____

[4]The supreme court has characterized this standard as "another way of stating the rational basis test in the specific context of a zoning challenge, focusing on whether the regulation promoted the public health, safety, morals, or general welfare, and, therefore, was a valid exercise of police power." *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 313 (2008).

destruction of property values of surrounding or subject property promotes the health, safety, morals or general welfare of the public, (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner, (5) the suitability of the subject property for the zoned purpose, (6) the length of time the property has been vacant as zoned, considered in the context of land development in the area, (7) whether a comprehensive zoning plan for land use and development exists, (8) and if so, whether the ordinance is in harmony with it, and (9) the evidence or lack of evidence of a community's need for a proposed use. See *Rodriguez v. Henderson*, 217 Ill. App. 3d 1024, 1029 (1991).

¶ 47    Although the plaintiff urged the trial court to consider the *La Salle* factors on summary judgment, this argument is not referenced in the trial court's decision. The City disputes that the *La Salle* factors have any applicability in cases involving historical landmarking because their focus is on the use of property, which is not what the ordinance at issue is attempting to regulate. The City asserts that neither it nor the plaintiff has identified any case in which the *La Salle* factors have been applied in a non-zoning context.

¶ 48    In arguing that the *La Salle* factors should apply with equal force to cases involving historic landmarking, the plaintiff cites the United States Supreme Court's recognition that a challenge to a landmark designation as arbitrary involves a "similar inquiry" as a challenge to the application of a zoning ordinance to specific property. See *Penn Central Transportation Co.*, 438 U.S. at 133 n.29. Factually, the plaintiff then argues that the evidence shows that the *La Salle* factors apply to this case as follows and weigh in his favor. First, the plaintiff contends that including his residence within the District does not promote the public good. This is because the District's boundaries are arbitrary, there are many buildings throughout Chicago with the same characteristics as the plaintiff's residence, and no final determination has been made that his

residence contributes to the historic character of the District. By contrast, the plaintiff asserts that he suffers considerable economic harm by the inclusion of his residence within the District's boundaries. He cites Kisiel's testimony that landmark designation reduces development rights, which harms him by prohibiting him from maximizing the development potential of his property. The plaintiff also cites evidence that landmarking increases his maintenance and repair costs. He cites evidence that the City has no comprehensive plan for landmarking. And he contends that, even if the District were a legitimate exercise in historic preservation, there is no community need to include the plaintiff's residence within it.

¶ 49　　　We reject the plaintiff's argument that the *La Salle* factors apply in this context involving the City's designation of a district with historical and architectural significance as a Chicago landmark. We find the *La Salle* factors to be incongruous with the policy considerations involved in the inclusion of specific parcels of property within the boundaries of a landmark district. We note that courts have generally rejected the argument that, because a specific parcel of property included within the boundaries of a landmark district does not itself possess the same architectural or historic significance held by other structures around it, applying landmark status to that property is arbitrary; is not related to the public health, safety, or welfare; or otherwise is an invalid exercise of a municipality's police power. The rationale for this was summarized as follows by the Supreme Court of North Carolina:

"It is widely recognized that preservation of the historic aspects of a district requires more than simply the preservation of those buildings of historical and architectural significance within the district. *** '[J]ust as important is the preservation and protection of the setting or scene in which (structures of architectural and historical significance) are situated.' [Citations.] This 'tout ensemble' doctrine, as it is now often termed, is an integral and

reasonable part of effective historic district preservation." *A-S-P Associates v. City of Raleigh*, 258 S.E.2d 444, 451 (N.C. 1979) (quoting *Maher v. City of New Orleans*, 371 F. Supp. 653, 663 (E.D. La. 1974), and citing *City of New Orleans v. Pergament*, 5 So. 2d 129 (La. 1941)).

Accord *Faulkner v. Town of Chestertown*, 428 A.2d 879, 884 (Md. 1981). Applying the *La Salle* factors in this context would be inconsistent with this policy critical to the preservation of historic landmark districts. Thus, we find the *La Salle* factors inapplicable in this particular case. Accordingly, no genuine issue of material fact is raised in this case by application of the *La Salle* factors.

¶ 50    In addition to his arguments above concerning the existence of a genuine issue of material fact, the plaintiff also argues that the trial court's entry of summary judgment was the product of multiple legal errors. First, the plaintiff argues that the trial court analyzed the wrong ordinance in granting summary judgment. The plaintiff argues that the trial court analyzed whether the Chicago Landmarks Ordinance survived rational basis review, instead of addressing the constitutionality of the ordinance that established the District.

¶ 51    We reject this argument. It is clear from the entirety of the trial court's order that the trial court was applying rational basis review to the City's designation by ordinance of the District as a Chicago landmark. Although this was an application of the Chicago Landmarks Ordinance, the trial court's analysis demonstrates that it understood the distinction and was analyzing the correct ordinance in evaluating the propriety of summary judgment.

¶ 52    The plaintiff's remaining challenges of legal error are related, and we address them together. The plaintiff argues that the trial court evaluated the propriety of summary judgment under the misapprehension that the parties had filed cross-motions for summary judgment and that the

plaintiff had thereby "concede[d] the absence of a genuine issue of material fact" and "invite[d] the court to decide the questions presented as a matter of law." See *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005). The plaintiff argues that the trial court's misapprehension on this point permeated the trial court's entire analysis because instead of construing the evidence strictly in the plaintiff's favor as the party opposing summary judgment, the trial court ignored the plaintiff's evidence and credited only the City's witnesses.

¶ 53    We recognize that, in setting forth in its order the principles applicable to the evaluation of a motion for summary judgment, the trial court referenced the filing of cross-motions of summary judgment and consequences thereof. However, nothing in the remainder of the trial court's analysis leads us to believe that it was under the misapprehension that the plaintiff had filed a cross-motion for summary judgment or that it evaluated the City's motion as if the plaintiff had conceded the absence of a genuine issue of material fact.

¶ 54    Instead, in our view, the trial court's reliance on the testimony by the City's witnesses was proper under the standards applicable in a case involving rational basis review of an ordinance. As referenced above, rational basis review requires that " '[i]f there is any conceivable set of facts to justify the statute, it must be upheld.' " *Kopf*, 2024 IL 127464 (quoting *People v. Pepitone*, 2018 IL 122034, ¶ 17). We thus find nothing improper about the trial court looking to the deposition testimony of the City's witnesses in considering whether any conceivable existed to justify a reasonable relationship between the City's designation of the District as a Chicago landmark and its interest in the preservation and protection of structures and areas in the City with historical and architectural significance. This is particularly true in light of the fact that the City had no burden to produce evidence in support of its decision, and a trial court would have been allowed to hypothesize reasons for the ordinance. See *Piccioli*, 2019 IL 122905, ¶ 20. Further, the plaintiff at

this stage had the "weighty burden" of presenting evidence that might negate "every basis which might support the law" (see *American Federation of State, County, & Municipal Employees (AFSCME), Council 31 v. State*, 2015 IL App (1st) 133454, ¶ 32), and we have held above that he failed to demonstrate the existence of a genuine issue of material fact.

¶ 55     As noted by the trial court, the summary judgment record includes deposition testimony by several former City employees and two expert witnesses in the fields of historic and architectural preservation, providing extensive explanations as to why the District encapsulates important architectural and historic aspects that make it worthy of designation as a Chicago landmark. It exhibits an urban visual character, with its contrasting masonry rowhomes and mansions. It is representative of a larger theme of residential development in Lincoln Park. The buildings that comprise the District have retained physical characteristics that define their historic significance, and the variety of buildings in the District capture the development of the City's north side during the representative period. We agree that this deposition testimony, along with the city council's reasons as set forth in the ordinance itself, clearly demonstrates that a reasonable relationship exists between the City's designation of the District as a Chicago landmark and the City's interest in the preservation and protection of areas with historical and architectural significance. Accordingly, the City was entitled to judgment as a matter of law, and the trial court properly granted its motion for summary judgment.

¶ 56                                 III. CONCLUSION

¶ 57     For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 58     Affirmed.

***Banks v. State's Attorney of Cook County*, 2025 IL App (1st) 232046**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-CH-9682; the Hon. Pamela M. Meyerson, Judge, presiding. |
| **Attorneys for Appellant:** | Kimberly M. Foxx, State's Attorney, of Chicago (Cathy McNeil Stein, Jonathon D. Byrer, Calvin Edwards, and Briana Leatherberry, Assistant State's Attorneys, of counsel), for appellant State's Attorney of Cook County. |
| | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Anna W. Gottlieb, Assistant Attorney General, of counsel), for other appellant. |
| **Attorneys for Appellee:** | Beth Johnson, of Rights & Restoration Law Group, LLC, of Chicago, for appellee. |